UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE LAVON KEYS,

   Movant,

v.

UNITED STATES OF AMERICA,

   Respondent.
              /

Case No. 1:10-CV-433
(Criminal Case No. 1:07:CR:45-01)

HON. GORDON J. QUIST

## OPINION

Pursuant to 28 U.S.C. § 2255, Movant, Tyrone Lavon Keys, has moved to vacate, set aside, or correct his sentence. The government has filed a response to Keys' motion, and Keys has filed a reply. Keys' motion asserts that his trial counsel provided ineffective assistance on three grounds: (1) failing to secure a written conditional plea agreement with the terms that Keys desired and agreed to; (2) improperly abandoning an alleged *Brady* violation claim regarding a gas station surveillance video; and (3) mis-advising Keys that he had no viable defense to the interstate nexus element of the felon-in-possession of a firearm charge to which he pled guilty. Keys also asserts that his appellate counsel was ineffective for failing to raise all three of these issues on direct appeal and for failing to properly seek reversal of this Court's denial of his motion to suppress the firearm. Finally, Keys requests an evidentiary hearing. Having reviewed the motion, briefs, and supporting documents, the Court concludes that Keys is not entitled to the relief he seeks.

### I. Background

**A. Factual History**

The following factual background is taken from the Sixth Circuit Court of Appeals Opinion affirming Key's conviction and sentence:

> At about 1:00 a.m. on October 2, 2006, Lansing Police Officer Nick Hughett and a civilian ride-along, John Legwin, observed Keys approach a car in a parking lot and, less than a minute later, enter the front-passenger seat of a nearby Suburban, which drove away. Hughett followed the Suburban and stopped the car when it changed lanes several times without signaling.
>
> Keys exited the Suburban as soon as it pulled over at a gas station and started to walk toward the station's convenience store. Hughett ordered Keys to return to the car and, when Keys did not comply, Hughett approached Keys, grabbed him by the arm and began to escort him toward the Suburban. Keys resisted and reached toward his waist, where Hughett saw a .45 caliber handgun tucked into Keys' waistband. When Hughett tried to restrain Keys, Keys fought back. During the struggle, the gun fell from Keys' waistband to the ground, and Keys continued reaching for it until Legwin stepped out of the cruiser and picked it up. Hughett eventually gained control of Keys, and additional officers soon arrived on the scene to bring an end to the confrontation. Injuries sustained by Hughett and Keys in the fight required both of them to get medical treatment.

*United States v. Keys*, 359 F. App'x 585, 586 (6th Cir. 2009) (citations omitted).

**B. Procedural History**

On February 21, 2007, a grand jury indicted Keys for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e). The Indictment referred to Keys as an armed career criminal having been convicted on at least three previous occasions of crimes of violence or drug trafficking punishable by more than one year imprisonment.

Through his initial trial counsel, Richard Gould, Keys filed a motion to dismiss, claiming a violation of the Speedy Trial Act, and a motion to suppress the firearm, claiming that it was seized in violation of his Fourth Amendment rights. Thereafter, Keys submitted a letter to the Court alleging that Mr. Gould was providing ineffective assistance and requesting new counsel. On October 4, 2007, new counsel, David Kaczor, was appointed. Thereafter, Keys filed a second motion to dismiss on speedy trial grounds and a second motion to suppress on Fourth Amendment grounds. In relation to the speedy trial claim, the second motion alleged that a surveillance video had not been timely provided to the defense and that the video itself had been intentionally tampered with because, although it should have captured the incident, it depicted only a blank screen.

2

However, Mr. Kaczor ultimately withdrew the portion dealing with the surveillance video because, although his expert had originally concluded that the tape had been tampered with, the expert changed his position after learning that his initial viewing of the video had been at an improper speed. Having subsequently viewed the video at the proper speed, he determined, as had the government's expert, that the tape had not been tampered with, and, instead, that the recording equipment had malfunctioned. (Suppression Hr'g. Tr. at 3-8.) On February 26, 2008, this Court issued an Order denying all four motions.

On March 12, 2008, without a written plea agreement, Keys pled guilty to Count One of the Felony Information, which charged him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), but which did not refer to him as an armed career criminal as had the original Indictment. By pleading guilty to the Felony Information, Keys preserved his ability to argue at sentencing that the Armed Career Criminal Act should not apply. (Plea Hrg. at 3-4.)

On July 31, 2008, Keys filed a letter with the Court requesting substitute counsel and attempting to withdraw his guilty plea. The letter claimed that Mr. Kaczor had coerced him into pleading guilty by promising him that he would get no more than ten years imprisonment. Keys claimed that he only pled guilty because he thought he was no longer subject to the Armed Career Criminal Act considering the language in the Felony Information as compared to the language in the Indictment.

On August 4, 2008, the Court denied Keys' motion to withdraw his guilty plea and appoint new counsel, noting, among other things, that at the plea hearing it was made clear to all what the possible penalties were and that by pleading guilty to the Felony Information, Keys simply preserved his ability to *contest* the armed career criminal enhancement. Ultimately, the Court

deemed Keys to be an armed career criminal, denied his request for acceptance of responsibility, and sentenced Keys to 262 months imprisonment and 5 years supervised release. The conviction and sentence were affirmed on appeal. *Keys*, 359 F. App'x at 586. Keys timely filed this § 2255 motion on May 4, 2010.

## II. Discussion

Pursuant to 28 U.S.C. § 2255(a), a prisoner in the custody of the United States may seek collateral relief from a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." With this motion, Keys asserts that both his trial and appellate counsel provided constitutionally ineffective assistance. The United States Court of Appeals for the Sixth Circuit has summarized the test for ineffective assistance of counsel as follows:

> A two-prong test establishes ineffective assistance of counsel: 1) the defendant must show that his counsel's performance was deficient; and 2) prejudice must have resulted to counsel's defendant from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The second prong requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.*
>
> "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052.
>
> To establish prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. 2052. To determine if Kinnard was prejudiced by his attorney's performance, it is necessary to determine if the proceeding was fundamentally unfair or unreliable; a court should not focus the analysis on the outcome. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L.Ed.2d 180 (1993).

4

*Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002). The same standard applies to claims of ineffective assistance arising from a guilty plea, although the prejudice prong is slightly altered; the required showing is that but for counsel's deficient performance, the movant would not have pleaded guilty and instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370 (1985).

For his first claim of ineffective assistance, Keys asserts that his trial counsel, Mr. Kaczor, failed to secure a written conditional plea agreement consistent with the terms Keys agreed to plead guilty to – namely, a ten year maximum sentence and the right to appeal the Court's ruling on his motions to suppress the firearm. Keys contends that Mr. Kaczor coerced him into pleading guilty on the false belief that he would not receive a sentence of more than ten years because he would receive a reduction in his offense level for acceptance of responsibility and because the armed career criminal enhancement would not apply. With regard to the reduction for acceptance of responsibility, Keys also asserts that Mr. Kaczor should have advised him to remain "silent" during the presentence investigation interview regarding any conduct beyond the charged offense. And as to counsel's failure to preserve Keys' ability to appeal the motions to suppress, Keys asserts that Mr. Kaczor knew that he had previously refused to sign a proposed written plea agreement because it contained a waiver of his appellate rights and that, but for Mr. Kaczor's ineffective assistance, Keys could have received appellate review of his suppression motions.

The Court rejects Keys' claim that counsel coerced him into pleading guilty on the false belief that he would not receive a sentence of more than ten years essentially for the same reasons it rejected Key's motion to withdraw his guilty plea on those grounds. Not only does Mr. Kaczor dispute ever having made such a statement, but even assuming he had, Keys cannot show prejudice because any such misleading information was effectively "remedied by the plea colloquy." *Stanley v. United States*, No. 1:08-CV-173, 2010 WL 4963003, at *4 (W.D. Mich. Dec. 1, 2010). During the plea

5

hearing, the Court explained at length to Keys the potential sentence he faced, including the possibility that he could ultimately be deemed an armed career criminal and sentenced to no less than 15 years, and Keys affirmed that he understood. (Plea Hr'g. at 7-9.) The Court also asked whether anyone had made him any promises about the sentence he would receive and Keys responded that no one had. (*Id.* at 19.) The Court then explained that no one could make such a promise because the sentence is for the Court alone to decide and Keys again responded that he understood. (*Id.* at 19-20.) Therefore, even if counsel had misled Keys as to the sentence he would receive, Keys cannot show that he was prejudiced thereby. *See Stanley*, 2010 WL 4963003, at *4 (finding that even assuming counsel had made inaccurate statements to defendant regarding the sentence he would receive, the court effectively remedied the misconception during the plea colloquy); *see also Odom v. United States*, Nos. 2:05-cv-326, 2:03-CR-74, 2008 WL 2566386, at *6-7 (E.D. Tenn. June 24, 2008) (same); *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (same).

The Court also rejects Keys' assertion that, with regard to the acceptance of responsibility, counsel should have advised him to remain "silent" during the presentence investigation interview. Mr. Kaczor advised Keys to the tell the truth during the interview. (Kaczor Aff. at 5.) Keys provides no authority for the proposition that counsel performs deficiently in providing such advice. The Court finds that Keys has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

Finally, the Court rejects Keys' argument that counsel was ineffective for failing to secure a written conditional plea agreement preserving his right to appeal the denial of his motions to suppress. Mr. Kaczor denies that Keys ever indicated a desire to enter into a conditional plea agreement so that he could appeal the motions, but even if Keys had made the request, a conditional

plea can only be entered with the consent of the government. Fed. R. Crim. P. 11(a)(2). Yet, Keys provides no evidence that the government ever offered or was even willing to negotiate such an agreement, and the record contradicts such a conclusion. (Sent. Tr. Aug. 4, 2008 at 21-26) (discussing the plea negotiations that took place between the parties, with no mention of a conditional plea agreement or preserving the right to appeal the suppression issue, and explaining that no plea could be reached because of Keys' insistence that the government commit to a five-year sentence). Under these circumstances, Keys simply has not demonstrated either deficient performance or prejudice. *See United States v. Curtis*, Nos. 1:04-CV-397, 1:03-cr-073, 2007 WL 896171, at *6 (E.D. Tenn. Mar. 22, 2010) (defendant could not show prejudice or that counsel performed deficiently in failing to inform him of the possibility that a conditional guilty plea could preserve his right to appeal the denial of his motion to suppress because the government never made such an offer); *Ross v. United States*, 339 F.3d 483, 492 (6th Cir. 2003) (finding that counsel was not ineffective for failing to negotiate a no-jail time plea agreement where the government never made such an offer and the petitioner offered no evidence that his counsel could have negotiated one).

For his next claim of ineffective assistance, Keys asserts that his counsel prejudicially abandoned his *Brady* violation claim regarding the gas station surveillance video. Keys ignores the fact that Mr. Kaczor did not withdraw the argument until his own expert reversed himself and concluded that the recording system had simply malfunctioned. Without an expert opinion in support of the position, Mr. Kaczor had no good faith basis to claim that the tape had, instead, been intentionally tampered with. The Court finds that Keys has failed to overcome the strong presumption that counsel performed reasonably or that his decision to withdraw the argument relating to the surveillance video was anything other than a matter of sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

Against his trial counsel, Keys' last claim of ineffective assistance is that counsel prejudicially mis-advised him that, because there are no firearm manufacturers in Michigan, he had no viable defense to the interstate commerce element of his offense. Keys asserts that he asked Mr. Kaczor to contest the interstate nexus requirement on the grounds that the firearm he possessed was lawfully transported to Michigan, where it was legitimately purchased by someone with the authority to make such a purchase, and, thus, it was never unlawfully transported across state lines. Yet, Mr. Kaczor refused to raise the argument.

The Court rejects Keys' contention that counsel was ineffective for failing to raise this argument. As an initial matter, during the plea hearing, the Court explained to Keys the interstate commerce element, and Mr. Kaczor reiterated that it "means that the gun was manufactured in a state other than Michigan or location other than Michigan and that ultimately it made its way into Michigan. So that affected commerce in that way." (Plea Hrg. at 7.) The Court affirmed Mr. Kaczor's explanation, asked Keys whether he understood, and he affirmed that he did. (*Id.*) Morever, Kaczor provides no authority that his proposed defense is a viable one, and in fact, the Court finds that it is not. *See United States v. Singleton*, 902 F.2d 471, 473 (6th Cir. 1990) (explaining that the mere fact that the firearm was manufactured in a different state is sufficient to satisfy the interstate nexus requirement); *United States v. McBee*, 295 F. App'x 796, 798 (6th Cir. 2008) ("[A] conviction under the felon-in-possession statute is justified if, as it did here, the firearm had previously traveled in interstate commerce."); *see also United States v. Shambry*, 392 F.3d 631, 634, n.1 (3d Cir. 2004) and cases cited therein (holding the interstate nexus element satisfied where the firearm is manufactured in a state other than where the possession occurred). Counsel is not ineffective for failing to raise meritless arguments. *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

Lastly, Keys raises two claims of ineffective assistance of appellate counsel. The first is that appellate counsel was ineffective for failing to raise the same claims of ineffective assistance of trial counsel he raises here. Having concluded that the claims lack merit, the Court also concludes that appellate counsel was not ineffective for failing to raise them. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). The second claim involves appellate review of this Court's denial of Keys' pre-plea motions to suppress. Although appellate counsel thoroughly briefed the issue, the Sixth Circuit Court of Appeals refused to review the Court's denial of the motions to suppress, stating the following:

> Keys challenges the district court's denial of his motion to suppress the gun as the fruit of an unlawful seizure. *See* U.S. Const. amend. IV. He cannot attack that ruling here, however, because he pleaded guilty without entering a written conditional plea preserving his right to appeal the issue. *See United States v. Herrera*, 265 F.3d 349, 351 (6th Cir.2001); Fed. R. Crim. P. 11(a)(2). Keys asks us to overlook that waiver, but he forfeited that request by not raising it until his reply brief. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 354 (6th Cir.2009).

*Keys*, 359 F. App's at 587. With one sentence in this motion, Keys asserts that appellate counsel was ineffective in failing to protect his right to ask the Court of Appeals to overlook the waiver by not making such request in the opening brief.

Assuming without deciding that appellate counsel performed deficiently in failing to specifically ask the court to overlook the waiver somewhere in the 19 pages of his opening brief dedicated to the suppression issue, the Court finds that Keys still has not established prejudice. That is, Keys has not shown that, had appellate counsel specifically asked the court to overlook the waiver, the court would have done so. Keys cites no case in which the Sixth Circuit has reviewed a pre-plea ruling where, as here, the defendant pled guilty without entering into a written conditional plea preserving the right to appeal the ruling, and the Court finds none. Nor does Keys provide any explanation as to why the Court of Appeals would have made an exception to the general rule in this

9

case. This is especially true considering that, during the plea hearing, the Court made it clear that Keys would not be able to appeal his conviction, only the sentence imposed, (Plea Hr'g. at 13), and neither he nor his counsel ever mentioned a desire to preserve the right to appeal the motions to suppress. *See United States v. Young*, 580 F.3d 373, 376 (6th Cir. 2009) (stating the general rule – "Sixth Circuit law is clear, however, that a guilty-pleading defendant may not appeal an adverse pre-plea ruling on a motion to suppress evidence unless he has preserved the right to do so in a written plea agreement under Criminal Rule 11(a)(2)" – and refusing to address the issue, noting that neither the defendant nor his counsel ever clearly expressed an intention to preserve the suppression issue on appeal). Because Keys has not shown that but for counsel's allegedly deficient performance, the result of the proceedings would have been different, he has not established prejudice. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2069.

Keys has requested an evidentiary hearing, but does not suggest what evidence such a hearing might uncover. Finding the record sufficient to decide the issues presented and to conclusively demonstrate that no relief is warranted, the Court denies Keys' request. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Keys has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Key's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The Court finds that reasonable jurists could not find that this Court's dismissal of Keys' claims was debatable or wrong. Therefore, the Court will deny Keys a certificate of appealability.

### III.  Conclusion

For the reasons set forth above, Keys' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied. The Court will also deny Keys' request for an evidentiary hearing. And a certificate of appealability will not be granted.

A separate Order will issue.


Dated:  April 13, 2011                                       /s/ Gordon J. Quist
                                                                GORDON J. QUIST
                                                        UNITED STATES DISTRICT JUDGE